CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

NOV 16 2011

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Criminal Action No. 7:08CR00050 |
| | ) | Civil Action No. 7:11CV80347 |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| | ) | |
| GEORGE MOIR HYLTON, JR., | ) | By: Hon. Glen E. Conrad |
| | ) | Chief United States District Judge |
| Defendant. | ) | |

George Moir Hylton, Jr., a federal inmate proceeding pro se, filed this action as a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255. The government has filed a motion to dismiss to which Hylton has responded, making the matter ripe for the court's disposition. For the reasons that follow, the government's motion to dismiss will be granted and Hylton's motion to vacate will be denied.

## Background

On November 6, 2008, Hylton was charged in a one-count indictment returned by a grand jury in the Western District of Virginia. Count One alleged that, on or about October 12, 2008, the defendant "did knowingly possess a firearm which had previously been shipped or transported in interstate or foreign commerce, after he had previously been convicted of a crime punishable by more than one year imprisonment," in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). (Indictment at 1). The indictment also included a forfeiture notice advising Hylton that the following property would be forfeited to the United States upon conviction: "(1) Marlin Model 60 .22 caliber rifle, Serial # 11289552 with all ammunition therewith associated." (Indictment at 2).

On December 28, 2009, Hylton pled guilty to Count One of the indictment, pursuant to a written plea agreement. By signing the agreement, Hylton acknowledged that if the court determined that he had at least three prior convictions for serious drug offenses and/or violent felonies, he would be subject to a mandatory minimum term of imprisonment of 15 years, pursuant to the Armed Career Criminal Act, 18 U.S.C. § 924(e). (Plea Ag. at 2). Although Hylton reserved the right to challenge the applicability of the armed career criminal enhancement, the parties agreed, pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, that Hylton would receive a term of imprisonment of 15 years, or 180 months, if the enhancement was found to apply.

By signing the plea agreement, Hylton also certified that he was pleading guilty because he was, in fact, guilty of the offense charged and not because of any threats or promises; that he had discussed the plea agreement and all other matters pertaining to the indictment with his attorney; and that he was fully satisfied with his attorney and the attorney's advice. (Plea Ag. at 2, 10). Under the terms of the plea agreement, Hylton agreed to waive his right to file a direct appeal "on any ground." (Plea Ag. at 7). He also agreed to "waive any right [he] may have to collaterally attack, in any future proceeding, any order issued in this matter . . . ." (Plea Ag. at 7).

During the plea hearing conducted pursuant to Rule 11 of the Federal Rules of Criminal Procedure, the court established that Hylton possessed the capacity to make a voluntary, intelligent, and informed plea. In response to questions from the court, Hylton stated under oath that he had completed the ninth grade; that he was not suffering from a physical or mental problem that would impair his ability to understand or participate fully in the proceeding; and that he was not under the influence of any drugs or intoxicants that would affect his reasoning,

comprehension, or communication skills. (Plea Hearing Tr. at 5-6). The court also established that Hylton understood the charge to which he was pleading guilty, as well as the purpose of the Rule 11 proceeding. (Tr. at 7-11).

The court instructed the prosecutor to review the salient portions of the plea agreement that Hylton had reached with the government. In response, the prosecutor outlined several sections of the plea agreement, including the section outlining the potential penalties that Hylton faced upon conviction. (Tr. at 9). The prosecutor advised Hylton that if the court determined that he qualified as an armed career criminal, he would be subject to a mandatory minimum term of imprisonment of 180 months, or 15 years, and that if the court determined that he did not qualify as an armed career criminal, he would be subject to a maximum term of imprisonment of 10 years. (Tr. at 9). The prosecutor also explained that the parties had agreed that a 15-year sentence would be imposed if Hylton qualified as an armed career criminal, but that Hylton had reserved the right to challenge the application of the enhancement. (Tr. at 10-12). Upon being asked if the prosecutor's summary of the plea agreement was consistent with his own understanding of the agreement, Hylton responded in the affirmative, and indicated that he did not have any questions about the plea agreement. (Tr. at 12).

The court then inquired as to whether Hylton was voluntarily pleading guilty. In response to questions from the court, Hylton affirmed that no one had made any promises or representations regarding the disposition of the case other than those set forth in the plea agreement, and that no one had attempted to coerce or force him to plead guilty. (Tr. at 13).

The court also questioned Hylton regarding his understanding of the potential application of 18 U.S.C. § 924(e). Hylton acknowledged that it would be necessary to determine whether he

had at least three prior convictions for violent felonies or serious drug offenses, and that if he qualified as an armed career criminal, he would be subject to a mandatory minimum period of incarceration of 15 years. (Tr. at 16).

The court subsequently reviewed the constitutional rights that Hylton would waive if he entered a plea of guilty. Notwithstanding all of the valuable constitutional rights that he would waive by pleading guilty, and the possibility that he might qualify as an armed career criminal under 18 U.S.C. § 924(e), Hylton stated that he still wished to enter a plea of guilty. (Tr. at 29).

The court asked Hylton to explain, in his own words, what he had done that made him believe that he was guilty of the firearm offense with which he was charged. In response, Hylton testified that although he did not "really . . . remember what happened" on the night in question because he had been drinking, he was satisfied, after having reviewed the evidence, that he possessed a firearm after having been convicted of a felony. (Tr. at 29, 33).

The court then called upon the prosecutor to present any evidence that would support Hylton's plea of guilty. Proceeding by proffer, the prosecutor summarized the government's evidence as follows:

> Your honor, if this case were to go before the jury, the Court would hear evidence of the occurrence of the 12th day of October 2008, at the address of 3759 Signal Hill Avenue, Northwest, in the City of Roanoke, in the Western Judicial District of Virginia.
>
> And on that day, the police received a phone call at approximately 10:56 p.m. of a domestic disturbance. A Mallory Callaway had called into the dispatcher, 9-1-1, a recorded phone call, in which she complained that George Hylton had been drinking too much and she couldn't take it anymore.
>
> The police arrived, evaluated the situation, and sent . . . the defendant, Mr. Hylton, to his room in the basement of the house, and

4

marked it off as being no crime at that time. They left the house at approximately 11:19 p.m.

Some 11 minutes later, the police received a second call. This time the call started out as being the son of Mallory Callaway; that is, her son, Paul Wright, called in and reported what basically was possibly an abduction, possible hostage situation of a man with a weapon at that same address. And they responded just a few minutes later.

During the recorded call, it was basically a threat to kill with a long gun. And what Mr. Wright reported to the police was that he had been confronted by Mr. Hylton, in possession of the .22-caliber rifle; that when Mr. Hylton turned his attention to his mother, he was able to get out of the house, go to a neighbor's house, and make this phone call. And he had been told by Mr. Hylton that, quote, "I have something for the both of you."

After he left, Mr. Hylton threatened Ms. Mallory Callaway and made a statement to her, "I should blow both of you away because you called the cops."

Once the cops arrived, Ms. Mallory Callaway gave consent to search the residence. And under the couch in the basement where Mr. Hylton stayed, and the couch that he routinely slept on, under that couch was located a .22-caliber Marlin rifle, Model 60, with a serial number of 11289552, stamped as having been manufactured in North Haven, Connecticut.

The gun was examined and found to contain 11 rounds, with one in the chamber.

Mr. Hylton was a convicted felon as of the date of this occasion, having had a malicious wounding conviction in state court, sale of marijuana, grand larceny from the person, and statutory burglary convictions.

This gun was examined by Special Agent Scott Fairburn, who is an expert in interstate nexus, and he determined on the 31st day of October, 2008, that the gun had in fact moved in or affected interstate commerce.

The gun was test-fired by Task Force Officer May, who's present here in the courtroom today, on 12/11/08, and the gun tested as designed as a firearm within the meaning of the federal statute.

> And that would be our summary of the evidence to support [the defendant's guilty plea].

(Tr. at 30-32).

The court subsequently questioned whether the prosecutor's summary of the evidence was consistent with Hylton's understanding as to what the evidence in the case would have been if the matter had gone forward to trial. Hylton responded in the affirmative. (Tr. at 33). In response to further questions from the court, Hylton stated that he was satisfied that he was in the house on the night in question, and that he had possessed a .22-caliber rifle after having been convicted of a felony. (Tr. at 33).

At the conclusion of the hearing, the court specifically inquired as to whether Hylton was satisfied with his attorney's representation, and as to whether he had any questions regarding anything that had been said during the hearing. Hylton indicated that he was satisfied with the services provided by his attorney, and that he did not have any questions for the court. (Tr. at 34-35).

Hylton's sentencing hearing was scheduled for March 8, 2010. Prior to the hearing, a probation officer prepared a presentence investigation report (PSR). In the PSR, the probation officer determined that Hylton qualified for sentencing as an armed career criminal pursuant to 18 U.S.C. § 924(e) and, thus, that he was subject to a mandatory minimum term of imprisonment of 180 months.

During the sentencing hearing, the court asked the probation officer to state for the record the prior felony convictions that gave rise to the application of the armed career criminal enhancement. In response, the probation officer noted that the prior convictions that gave rise to

the enhancement were contained in paragraphs 25, 27, 28, 30, and 31 of the PSR.[1] (Sentencing Tr. at 9). The defendant did not challenge the accuracy of the report. His attorney argued, however, that the court should decline to apply the armed career criminal enhancement, based on the age of the prior convictions. The court ultimately overruled the defendant's objection and found that Hylton qualified as an armed career criminal. Accordingly, the court sentenced him to the mandatory minimum term of imprisonment of 180 months, as stipulated by the parties in the plea agreement.

Hylton appealed his conviction and sentence to the United States Court of Appeals for the Fourth Circuit. His appellate counsel filed a brief pursuant to Anders v. California, 386 U.S. 738 (1967), questioning whether the court erred in finding that Hylton was an armed career criminal, since his prior convictions for violent felonies were sustained 25 years prior to sentencing for the instant offense. The Fourth Circuit rejected the argument, concluding that the court did not err in determining that Hylton qualified as an armed career criminal. See United States v. Hylton, 429 F. App'x 329, 330 (4th Cir. 2011).

On July 8, 2011, Hylton filed the instant motion to vacate pursuant to 28 U.S.C. § 2255. The government has moved to dismiss the motion, arguing that it is barred by the waiver of collateral attack rights contained in the plea agreement, and that it is without merit. Hylton filed a response to the motion on October 3, 2011. The matter is now ripe for review.

---

[1] The prior felony convictions included convictions for unlawful wounding, statutory burglary, and distribution of marijuana.

## Discussion

In moving to vacate his conviction and sentence, Hylton asserts three claims of ineffective assistance of counsel. Specifically, Hylton alleges that his counsel provided ineffective assistance by not investigating the prior convictions that served as predicate offenses for his designation as an armed career criminal; by failing to move for a downward departure on the basis of diminished capacity; and by failing to challenge the validity of the indictment. Hylton asks the court to vacate his guilty plea on the basis that these alleged errors rendered his plea invalid. For the following reasons, the court concludes that each of Hylton's claims is without merit.[2]

### I. Claims of Ineffective Assistance

Claims of ineffective assistance are reviewed under the standards set forth in Strickland v. Washington, 466 U.S. 668 (1984), and its progeny. To succeed on a claim of ineffective assistance, a defendant must demonstrate "that counsel's performance was deficient," and that "the deficient performance prejudiced the defense." Id. at 687. To demonstrate deficient performance, Hylton "must show that counsel's representation fell below an objective standard of reasonableness" measured by "prevailing professional norms." Id. at 688. To demonstrate prejudice, Hylton "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

---

[2] Because the court concludes that the defendant's claims are without merit, the court finds it unnecessary to address the government's waiver argument.

### A. Prior Convictions

In challenging the effectiveness of his attorney's assistance, Hylton first claims that his attorney was ineffective in failing to investigate the prior convictions used as predicates for his designation as an armed career criminal. Hylton contends that if his attorney had performed an adequate investigation, the attorney would have discovered that Hylton was coerced into pleading guilty to three of the offenses, and that all of the prior cases were adjudicated by a biased judge.

Having reviewed the applicable case law, the court concludes that this claim is foreclosed by the United States Supreme Court's decision in Custis v. United States, 511 U.S. 485 (1994). In Custis, the Supreme Court addressed whether a defendant sentenced as an armed career criminal could collaterally attack the validity of the previous state convictions used to enhance the defendant's federal sentence. The Court held that, "with the sole exception of convictions obtained in violation of the right to counsel," as established in Gideon v. Wainwright, 372 U.S. 335 (1963), a defendant has no right to collaterally attack the prior convictions during his federal sentencing proceeding. Id. at 487. Although the defendant in Custis invited the Court to extend the right to collaterally attack prior convictions used for sentence enhancements beyond the right to have appointed counsel, the Court "decline[d] to do so." Id. at 496. Consequently, the Court refused to entertain the defendant's challenges to his prior convictions on grounds that the defendant was denied effective assistance of counsel, and entered guilty pleas that were not knowing and intelligent, finding that "[n]one of these alleged constitutional violations rises to the level of a jurisdictional defect resulting from the failure to appoint counsel at all." Id.; see also Daniels v. United States, 532 U.S. 374 (2001) (holding that the defendant could not use a § 2255

motion to collaterally attack the prior state convictions used to enhance his sentence under the Armed Career Criminal Act).

In this case, while Hylton contends that his prior state convictions were unconstitutional, he has failed to identify a viable basis upon which counsel could have challenged his prior convictions at the time of sentencing under the Armed Career Criminal Act. Hylton's presentence report, the accuracy of which he does not dispute, indicates that he was represented by counsel in conjunction with each of the relevant prior convictions and, thus, that there was no Gideon violation. Because "[n]o other constitutional challenge to a prior conviction may be raised in the sentencing forum," Daniels, 532 U.S. at 383, Hylton cannot establish that his counsel's performance was deficient or prejudicial. Accordingly, his first claim is subject to dismissal.

### B. Alleged Diminished Capacity

Hylton next contends that his attorney was ineffective in failing to move for downward departure under § 5K2.13 of the United States Sentencing Guidelines, based on his alleged diminished capacity. Hylton asserts that he has a history of psychological problems, and that counsel possessed medical records which would have supported a motion for downward departure under this section.

The court agrees with the government that this claim is also without merit. Once the court determined that Hylton qualified as an armed career criminal under § 924(e), he was subject to a statutory mandatory minimum term of imprisonment of 180 months. As a result, Hylton could not receive a sentence below that mandatory minimum unless the government made a substantial assistance motion under 18 U.S.C. § 3553(e), or Hylton qualified for treatment

under the safety valve provision contained in 18 U.S.C. § 3553(f). In this case, the government did not move for a reduction in sentence under § 3553(e), and Hylton did not qualify for the safety valve provision. Consequently, the court was bound by the mandatory minimum sentence prescribed by § 924(e), and it would have been futile for counsel to move for a departure under § 5K2.13. In sum, Hylton cannot establish that counsel performed in a deficient manner by failing to move for a departure, or that he suffered any resulting prejudice.

### C.    Validity of the Indictment

In his third claim, Hylton alleges that counsel was ineffective in failing to move to dismiss the indictment. Hylton contends that the indictment was defective because it did not charge him with possessing a particular type of firearm. For the following reasons, the court agrees with the government that this claim is also subject to dismissal.

"To pass constitutional muster, an indictment must (1) indicate the elements of the offense and fairly inform the defendant of the exact charges and (2) enable the defendant to plead double jeopardy in subsequent prosecutions for the same offense." United States v. Williams, 152 F.3d 294, 299 (4th Cir. 1998). The notice requirement "derives from the defendant's Sixth Amendment right to be informed of the nature and cause of the accusation." United States v. Hooker, 841 F.2d 1225, 1230 (4th Cir. 1988). "It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as 'those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished.'" Hamling v. United States, 418 U.S. 87, 117 (1974) (quoting United States v. Carll, 105 U.S. 611, 612 (1882)).

Applying these principles, it is clear from the record that the indictment in this case was sufficient, and that Hylton's attorney was not ineffective in failing to move to dismiss the indictment. The indictment tracked the statutory language and set forth all of the elements necessary to sustain a conviction under § 922(g)(1). See United States v. Moye, 454 F.3d 390, 396 (4th Cir. 2006) ("We have previously explained that the elements required for conviction under § 922(g)(1) are: (1) the defendant previously had been convicted of a crime punishable by a term of imprisonment exceeding one year; (2) the defendant knowingly possessed, transported, shipped, or received, the firearm; and (3) the possession was in or affecting commerce, because the firearm had traveled in interstate or foreign commerce at some point during its existence."). Contrary to Hylton's assertions, the particular type of firearm is not a required element, and the omission of this information from Count One did not render the indictment defective.[3] See United States v. Downing, 2011 U.S. App. LEXIS 10484, at *3-4 (4th Cir. May 24, 2011) (holding that an indictment charging a violation of § 922(g)(1) was sufficient, despite the fact that it did not identify the type or number of firearms involved); see also United States v. Verrecchia, 196 F.3d 294, 301 (1st Cir. 1999) (noting that "Congress did not intend the possession of a particular firearm to be an element of a § 922(g)(1) violation"). Accordingly, Hylton cannot establish that his counsel's performance was deficient or that it prejudiced his defense.

---

[3] In any event, the court agrees with the government that Hylton was given notice of the particular firearm at issue. Although Count One of the indictment did not identify the particular firearm, the forfeiture notice contained in the indictment advised the defendant that he would be required to forfeit, upon conviction, "(1) Marlin Model 60 .22 caliber rifle, Serial # 11289552 with all ammunition therewith associated." (Indictment at 2).

## II. Challenge to the Guilty Plea

Liberally construed, Hylton's § 2255 motion also alleges that his plea of guilty was not knowingly and voluntarily made. However, this claim directly contradicts the sworn statements Hylton made during his Rule 11 hearing. As previously summarized, Hylton affirmed during the hearing that no one had attempted to coerce or compel him to enter a plea of guilty. Hylton also affirmed that he understood the charge to which he was pleading guilty; the constitutional rights that he would waive by entering a plea of guilty; the potential range of punishment; and the fact that he would be subject to a mandatory minimum term of imprisonment of 15 years if the court determined that he qualified as an armed career criminal. Indeed, the court and the prosecutor emphasized, on multiple occasions, that Hylton would face a mandatory minimum term of imprisonment of 15 years if he qualified as an armed career criminal under § 924(e), and Hylton stated, on each occasion, that he understood the impact that his criminal history would have on the potential range of punishment. At the conclusion of the hearing, Hylton indicated that he did not have any questions about any aspect of his case, and that he was satisfied with all aspects of his attorney's services.

Hylton has not pointed to any evidence that would undermine his prior statements regarding the voluntariness of his guilty plea or the sufficiency of his attorney's representation. Consequently, Hylton is bound by the representations that he made during the Rule 11 hearing, and his allegations contradicting those representations must be rejected. See Fields v. Atty. Gen. of Md., 956 F.2d 1290, 1299 (4th Cir. 1992) ("Absent clear and convincing evidence to the contrary, a defendant is bound by the representations he makes under oath during a plea colloquy.") (citing Blackledge v. Allison, 431 U.S. 63, 74-75 (1977)); see also United States v.

13

Lemaster, 403 F.3d 216, 221-222 (4th Cir. 2005) ("[I]n the absence of extraordinary circumstances, the truth of sworn statements made during the Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements.").

## Conclusion

For the reasons stated, the court will grant the government's motion to dismiss and deny the defendant's motion to vacate. Additionally, because the defendant has failed to demonstrate "a substantial showing of the denial of a constitutional right," the court will deny a certificate of appealability. See 28 U.S.C. § 2253(c).

The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to the defendant and all counsel of record.

ENTER: This 16th day of November, 2011.

_____
Chief United States District Judge